## COMMONWEALTH *vs.* HORACE T. HILDRETH.

On the trial of an indictment for being a common seller of intoxicating liquors, the Commonwealth, after introducing evidence of sales in a certain house, and for the purpose of proving that the defendant owned or occupied the house, may give in evidence his statements a year before the time covered by the indictment, that he was repairing the house, and it would cost him as much as to build a new one.

Upon a trial for being a common seller of intoxicating liquors from August 1st to December 1st 1857, a newspaper published in January 1858, containing an article purporting to be signed by the defendant, speaking of his keeping a certain public house and selling liquor. there, was admitted in evidence, after the introduction of evidence of sales of liquor in that house, and of the defendant's speaking to the editor of the newspaper about publishing a series of such articles, but without proof that he wrote the article or handed the manuscript of it to the editor. *Held,* that the article was rightly admitted in evidence: and that whether it was in the defendant's handwriting was immaterial, if he afterwards ratified it.

INDICTMENT, found at February term 1858 of the court of common pleas, for being a common seller of intoxicating liquor at Natick, from the 1st of August 1857 to the day of finding the indictment.

At the trial at the same term, before *Mellen,* C. J., the Commonwealth introduced evidence of sales of liquor by different persons at a public house in Natick, called the Lake Shore House; and, to show that the defendant kept that house during the time covered by the indictment, offered to prove that the defendant, about a year and a half before the time of the trial, said that he was repairing this house, and that it was about as expensive as building a new one. The defendant objected to this evidence, but the judge admitted it.

For the purpose of showing that the defendant owned and occupied this house, the Commonwealth was allowed, against the defendant's objection, to give in evidence an article, purporting to be signed by the defendant, published in the Natick Observer, a newspaper published at Natick, on the 2d of January 1858, an extract from which is copied in the margin.* George O. Willard, the editor of that newspaper, had previously

---

* It is to accommodate the public that the Lake Shore House was opened, and if the people of the town think it an injury to the place, as it has been and

testified that after the publication of this article he had a con-versation with the defendant about a series of articles furnished for publication and purporting to come from the defendant; but the defendant did not give him any of them; that the defendant asked him if he wanted another article, and he re-plied he did not; that he set up the article, but could not say that the printed impression was an exact copy, although he made it as nearly so as he could; that he supposed the original manuscript was burnt, and that he did not know whether it was in the defendant's handwriting.

The defendant offered to prove that the manuscript was not in his handwriting. But the judge excluded the evidence; and refused to instruct the jury that in order to bind the defendant by this article, they must be satisfied that he wrote it, or ordered it to be written; and instructed them that if the article was not written by the defendant or by his authority, but he afterwards ratified it, the jury would regard it as his.

The defendant further requested the judge to instruct the jury that as there was no evidence of sales of intoxicating liquor after the 1st of December 1857, the publication of the article in the Observer on the 2d of January 1858, being in gen-eral terms, had no tendency to show that the defendant was keeper of the Lake Shore House from August 1st to December 1st 1857. But the judge declined so to rule, and ruled that the article had a legal tendency to show such keeping of the house.

The jury found the defendant guilty, and he alleged excep-tions.

---

is conducted, down comes the sign. The profits accruing from the liquor sold is no inducement to keep open the house if it is an injury to the town's people. The proprietor wishes to do nothing to injure his townsmen; but can a public house be kept in the place, without selling liquor, when there are so many places in town where it is sold wholesale? I wish the people of Natick to understand that I can obtain a livelihood without selling liquor, or keeping a public house. I did not open the house for the sake of selling rum, or as a nuisance, but as a benefit to the place. I do not desire the poverty-stricken multitudes of Natick to spend their money and time to stop me from selling liquor, for both parties are in all conscience poor enough now.

*G. A. Somerby & B. F. Ham*, for the defendant. 1. The evidence of what the defendant said more than a year before had no legal tendency to prove that the defendant kept the Lake Shore House during the time covered by the indictment.

2. The article in the Observer should not have been admitted. Its authorship was not either directly or indirectly brought home to the defendant. Story on Agency, § 239. The printed impression, being secondary evidence, was inadmissible. 1 Greenl. Ev. § 558. *Taunton Bank* v. *Richardson*, 5 Pick. 436. If admitted, it only showed that the defendant kept the house, and that some one, not proved to be the defendant or authorized by him, sold intoxicating liquors there; and did not support this indictment. *Commonwealth* v. *Madden*, 1 Gray, 486. *Commonwealth* v *Putnam*, 4 Gray, 16.

3. The instructions prayed for should have been given, and those given were erroneous. They were vague and indefinite, and did not define the term " ratified," or point out or describe the acts from which a ratification might be inferred. Story on Agency, § 239. Neither does the word " ratified " import any recognition or adoption of the article, or affirmation of its statements, so as to justify its being regarded as the defendant's. *Wyman* v. *Hallowell & Augusta Bank*, 14 Mass. 58.

4. The article had no legal tendency to prove that the defendant kept the Lake Shore House from the 1st of August to the 1st of December 1857.

*S. H. Phillips*, (Attorney General,) for the Commonwealth.

BY THE COURT. 1. The statement of the defendant that he was repairing the house, in which there was evidence that liquor had been sold, had some tendency to prove that he was the owner and occupant of the house, and was rightly admitted for that purpose.

2. The article published in the Natick Observer was sufficiently identified to be competent evidence for the same purpose, and its effect and weight were for the jury. It bore the signature of the defendant and purported to be written by him. But it is immaterial whether he wrote it or not. It is enough if he

recognized or sanctioned it. The evidence that it was not in his handwriting was rightly rejected as immaterial.

3. The instruction that if the defendant ratified the article after it was written, the jury would regard it as his, was right. If he recognized the article as his, or made it his own, or referred to it as expressing his views, it was enough.

4. The article published on the 2d of January 1858 spoke of keeping the house at a period then passed, and was rightly admitted in support of the charge of selling liquors since the 1st of August previous.                    *Exceptions overruled.*